(956 P.2d 1351)
No. 77,332

STATE OF KANSAS, *Appellee*, v. U.S. CURRENCY IN THE AMOUNT
OF $3,743 (DALE CLAYTON), *Appellant.*

—

Opinion filed
April 17, 1998.

*F. G. Manzanares*, of Topeka, for appellant.

*James A. Brown*, assistant district attorney, *Joan M. Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before ROYSE, P.J., MARQUARDT and KNUDSON, JJ.

ROYSE, J.: The State brought this forfeiture action pursuant to K.S.A. 65-4171. The district court determined that Dale Clayton was in default and ordered the sum of $3,743 forfeited to the State. Clayton filed a motion to set aside the default judgment, arguing that he was deprived of his property without due process of law under the Kansas and United States Constitutions. The district court denied the motion, and Clayton appeals. We reverse and remand for further proceedings.

Dale Clayton was arrested on October 12, 1993 in Shawnee County. At the time of his arrest, the police seized a pager, a cellular phone, and $3,743 in cash. On November 1, 1993, the State filed a petition for forfeiture of the property seized. The district court issued an order the following day, directing all persons with an interest in the property who wished to challenge the forfeiture to file pleadings with the district court within 41 days of November 17, 1993. The order indicated that those who failed to do so would be in default and waive any claim to the property. Thus, the district court directed that those persons who failed to file their pleadings by December 28, 1993, would waive their claim to the property.

On December 13, 1993, the State filed an affidavit stating that a copy of the district court's order had been published in the Topeka Metro News on November 17, November 24, and December 1, 1993. Inexplicably, the State waited until February 1, 1994, before mailing a copy of the petition and the district court's order by certified mail, return receipt requested, to Clayton at 314 SW 1st Street, Emporia, Kansas, 66801. The letter was delivered on February 3, 1994. The return receipt was signed by "Sarah Williams" as the addressee. The State filed a Certificate of Service on March 16, 1994, and on March 17, 1994, the district court found Clayton in default and ordered the property forfeited.

Clayton wrote to the district court from the Winfield Correctional Facility on December 26, 1995, to inquire about a possible

civil seizure of his money and property. Clayton indicated that the criminal case filed against him in Shawnee County had been dismissed, and there was no further reason for the State to hold his property. He advised that he had received no paper work about any civil case that might have been filed and asked for information about any such case. Clayton later wrote the District Court of Shawnee County, asking for copies of the pleadings and again stating he had received no notice of the forfeiture action.

Clayton filed a motion to set aside the default judgment on May 13, 1996. He filed an answer to the forfeiture on May 16, 1996. Both of these pleadings pointed out that at all times material he had been in the custody of the State of Kansas but had not been provided with notice of the State's forfeiture action. Based on the parties' written submissions, the district court denied Clayton's motion to set aside the default judgment, finding that the State had acted in accord with K.S.A. 65-4171(c) and that Clayton's delay in filing his motion to set aside the default judgment was unreasonable.

Clayton contends the State failed to comply with the notice requirements applicable to a forfeiture proceeding, thus depriving him of due process and rendering the default judgment entered against him void. Sufficiency of notice is a legal question, subject to unlimited review on appeal. *Farmland Industries, Inc. v. Kansas Corporation Comm'n*, 24 Kan. App. 2d 172, 176, 943 P.2d 470, *rev. denied* 263 Kan. 885 (1997). De novo review is also appropriate when the controlling facts are presented by a written record, since the appellate court has as good an opportunity to consider the record and determine the facts as did the trial court. *In re Adoption of Baby Boy B.*, 254 Kan. 454, 457, 866 P.2d 1029 (1994).

This action is governed by the forfeiture provisions contained in K.S.A. 65-4171 *et seq.* Although the legislature replaced those provisions in 1994 by adopting the Kansas Standard Asset Seizure and Forfeiture Act, K.S.A. 60-4101 *et seq.*, the new Act applies when the acts giving rise to the forfeiture occur after July 1, 1994. K.S.A. 60-4124(c). Thus, the new Act has no application to this case.

K.S.A. 65-4171(c) contained the provisions for notice in forfeiture proceedings. It required the attorney for the petitioner in a

forfeiture action to give notice of the proceedings by (1) publishing once each week for 3 consecutive weeks in a newspaper in the county where the property was located a copy of the order to show cause why the property should not be forfeited; and (2) sending a copy of the petition and order to show cause by certified mail, return receipt requested, or by personal service of process, to each person having ownership of or a security interest in the property.

Clayton does not dispute that the State complied with the publication requirement of 65-4171(c)(1). Instead, he argues that the State failed to satisfy the requirements of 65-4171(c)(2). Specifically, Clayton argues that the State mailed the copies of the petition and order to show cause to an address where he did not reside. He contends that the State either knew or should have known that he was in the custody of the Kansas Department of Corrections (KDOC) during the pendency of the forfeiture proceedings and that the State should have sent the certified letter to the correctional facility where he resided.

The State asserts that Clayton provided the Emporia address when he was arrested and booked into the Shawnee County jail and that it had no reason to know he remained incarcerated during the proceedings. The only support for that assertion in the record on appeal, however, is an allegation in one of the State's pleadings. The record on appeal contains no evidence that Clayton provided the Emporia address or, more importantly, that the State did not know it had Clayton in custody. It is well settled that a party must designate a record sufficient to establish its claims. Assertions in a pleading are not sufficient to remedy inadequacies in the record on appeal. *Kenyon v. Kansas Power & Light Co.*, 17 Kan. App. 2d 205, Syl. ¶¶ 1, 3, 836 P.2d 1193 (1992).

The record on appeal, in fact, indicates that Clayton was in the State's custody from October 12, 1993, to February 8, 1994. He was initially detained in the Shawnee County jail. The jail records show that from the Shawnee County jail, Clayton was transferred on October 15, 1993, to the custody of the KDOC. He went first to the Kansas Reception and Diagnostic Center and then on to the Kansas State Correctional Facility in Ellsworth, Kansas. The State

nevertheless mailed the copies of the petition and order to show cause to an address in Emporia.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950).

Although no previous Kansas case has addressed the specific notice problem presented here, a number of federal court decisions have addressed similar notice problems in forfeiture proceedings.

In *Robinson v. Hanrahan*, 409 U.S. 38, 34 L. Ed. 2d 47, 93 S. Ct. 30 (1972), the Supreme Court concluded that the State of Illinois had failed to provide sufficient notice to Robinson of a forfeiture proceeding. Robinson had been arrested on a charge of armed robbery. The State immediately began a forfeiture proceeding against Robinson's automobile. Even though Robinson was in custody in the Cook County jail, the State mailed notice of the forfeiture proceedings to Robinson's home address as listed in the records of the Secretary of State. Robinson did not learn of the forfeiture proceeding until after his release from jail.

The Supreme Court applied the *Mullane* test in concluding that the Illinois forfeiture order must be set aside:

"In the instant case, the State knew that appellant was not at the address to which the notice was mailed and, moreover, knew also that appellant could not get to that address since he was at that very time confined in the Cook County jail. Under these circumstances, it cannot be said that the State made any effort to provide notice which was 'reasonably calculated' to apprise appellant of the pendency of the forfeiture proceedings." 409 U.S. at 40.

Another case which addressed the problem of notice in a forfeiture proceeding to an incarcerated property owner is *U.S. v. Woodall*, 12 F.3d 791 (8th Cir. 1993). Woodall was arrested in 1989 and convicted on a federal firearms charge. In 1990, the Drug Enforcement Administration (DEA) obtained an administrative forfeiture of the $1,811 in cash seized from Woodall when he was arrested.

Woodall filed a collateral action in 1992, seeking to have the forfeiture set aside. He argued that the DEA's failure to give him notice of the forfeiture proceedings violated his due process rights. Woodall asserted that the DEA mailed notice of the forfeiture to his home address and to the St. Charles, Missouri, jail where he was initially detained, even though he had been released on bond to a different address known to the government. The district court dismissed Woodall's petition, and the 8th Circuit reversed and remanded.

The court pointed out that the adequacy of notice is measured at the time the notice was sent. 12 F.3d at 794. The court further observed that actual notice is a constitutional requirement for a proceeding which will adversely affect the liberty or property interests of a party if the party's name and address are reasonably ascertainable. 12 F.3d at 794. Finally, the court concluded:

"[I]f the government is incarcerating or prosecuting the property owner when it elects to impose the additional burden of defending a forfeiture proceeding, fundamental fairness surely requires that either the defendant or his counsel receive actual notice of the agency's intent to forfeit in time to decide whether to compel the agency to proceed by judicial condemnation." 12 F.3d at 794-95.

See also *U.S. v. Giraldo*, 45 F.3d 509, 511 (1st Cir. 1995) (jailed property owner did not receive adequate notice of forfeiture when notice mailed to his home address); *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1161 (2d Cir. 1994) (holding that where agency seeking forfeiture knows property owner is "residing at a place of the government's choosing," due process requires agency to take steps to determine where owner is incarcerated).

Based on the due process analysis of the foregoing cases, the notice in this case was inadequate. Under the circumstances presented here, it cannot be said that the State made an effort to provide Clayton with notice which was "reasonably calculated" to apprise him of the forfeiture proceedings. The State's act of sending the copy of the petition and order by certified mail to an address which it should have known Clayton no longer resided is no more than a token gesture to provide notice. The return receipt, incorrectly bearing the signature of some unknown individual as the addressee, should have alerted the State to the deficiency. When

the jail records showed that Clayton was booked out to another agency, identified as the "SDOC," a minimal effort would have revealed Clayton's whereabouts within the correctional system.

Where the State knows or has reason to know the property owner is in custody, and where the State sends a notice of forfeiture by certified mail to the owner's home address but the return bears the signature of someone other than the property owner or his agent, the State must take reasonable steps to locate where the property owner is incarcerated in order to effectuate delivery of the notice.

The district court seems to have relied on an alternative rationale in denying Clayton's motion; the district court concluded that Clayton waited too long to challenge the default judgment. The first problem with this conclusion is that the district court, at least to some extent, relied on the provisions of K.S.A. 60-4111(a). As noted above, that statute has no application to this case. Secondly, the district court overlooked the fact that "[a] judgment is void if the court acted in a manner inconsistent with due process. A void judgment is a nullity and may be vacated at any time." *In re Marriage of Hampshire*, 261 Kan. 854, 862, 934 P.2d 58 (1997). The mere passage of time is insufficient to preclude a party from challenging a void judgment. *Bethany Medical Center v. Niyazi*, 18 Kan. App. 2d 80, 83, 847 P.2d 1341 (1993).

For all these reasons, we conclude the district court erred in denying Clayton's motion to set aside the default judgment.

Reversed and remanded for further proceedings.